JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, John Williams, appeals his convictions for aggravated murder, attempted murder, aggravated robbery, kidnapping, and having a weapon while under a disability. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On March 17, 2005, the Cuyahoga County Grand Jury indicted appellant, along with five co-defendants, on 13 counts, including four counts of aggravated murder, in violation of R.C. 2903.01; one count of attempted murder, in violation of R.C. 2903.02 and 2923.02; three counts of aggravated robbery, in violation of R.C. 2911.01; three counts of kidnapping, in violation of R.C. 2905.01; one count of aggravated burglary, in violation of R.C. 2911.11; and one count of having a weapon while under a disability, in violation of R.C. 2923.13.[1] Appellant pleaded not guilty to all charges.
 {¶ 3} A bench trial commenced on January 30, 2007. The court found appellant guilty on all counts of the indictment, as well as on the one-and three-year firearm specifications. On February 22, 2007, the court sentenced appellant to life without the possibility of parole until 43 years have been served. This sentence included three years for the merged firearm specification, to be served consecutive *Page 4 
to 20 years for Counts 1 and 2 for the aggravated murder of Rebecca Cordoves and 20 years for Counts 3 and 4 for the aggravated murder of Jorge Santiago. All remaining sentences on the nine remaining counts were to be served concurrent to the 43-year sentence imposed by the court. Appellant filed a timely notice of appeal.
 {¶ 4} At trial, the state produced four witnesses who were directly involved in the commission of the crimes that occurred on December 13, 2004 at Tony's Delicatessen on Scranton Road in Cleveland, Ohio. The co-defendants in this case are Mario Keith, William Marshall, James Corbin, L. C. Wainwright, and Sean Rembert. All of these men, except Rembert, testified at appellant's trial. All six men were charged with crimes stemming from the robbery of Tony's Deli that evening, including the murders of Rebecca Cordoves, a 21-year-old mother of two, and Jorge Santiago, a store clerk at Tony's Deli. Appellant testified on his own behalf in the defense's case.
 {¶ 5} Although there are some minor discrepancies in the testimony, for the most part, the accounts by Keith, Marshall, Corbin, and Wainwright are consistent with the testimony of appellant himself. In addition, there was eyewitness testimony from Fethi Belhouane, aka "Tony," the owner of the deli, as to the events that took place at his store.
 {¶ 6} Appellant's testimony at trial established that, prior to December 13, appellant and his co-defendants planned the robbery of Tony's Deli. On the evening of the robbery and murders, Marshall gave appellant a 9 mm handgun and gave *Page 5 
Rembert a .38 Smith Wesson revolver. Then Keith, Wainwright, Rembert, and appellant traveled to Tony's Deli. Wainwright, Rembert, and appellant entered the store. Appellant testified that he shot his weapon two times while in the store to establish order and command authority over the people inside. He testified that he did not aim at anyone. He further testified that he stole $1500 directly from Tony and another $200 from behind the counter.
 {¶ 7} Appellant testified that Rembert ordered Mr. Santiago to open the cash register. He further testified that Mr. Santiago could not open the register, so Rembert got frustrated with him and shot him. Appellant testified that he heard an additional gunshot, but he did not see anything because he was bent down behind the counter. Appellant then testified that he, Wainwright, and Rembert left the store and traveled with Keith to Monique Raglan's home, where they met up with Corbin and Marshall. He testified that the six men split up the money he had stolen from Tony's Deli. Finally, he testified that he and his five co-defendants did not speak about the events that occurred in the deli, and he learned about the fatal shootings of Ms. Cordoves and Mr. Santiago the following day on the news.
 {¶ 8} There was undisputed trial testimony elicited from Sergeant Nathan Wilson of the Cleveland Police Department Forensics Unit that the bullets removed from the bodies of Ms. Cordoves and Mr. Santiago were shot from the .38 revolver *Page 6 
ecovered during the investigation. According to appellant and two co-defendants,[2] Rembert had possession of the .38 revolver, whereas appellant had possession of the 9 mm handgun. There was also undisputed testimony that bullet holes from a 9 mm handgun were found in the wall of the store behind the counter.
 {¶ 9} In his appeal, appellant does not contest the credibility of the evidence, but rather that the law cannot convict him on the aggravated murder charges in the indictment. Appellant's testimony, however, supplies nearly all the relevant facts for such a conviction.
 Sufficiency of the Evidence {¶ 10} "I. The state failed to present sufficient evidence to sustain a conviction against appellant."
 {¶ 11} In his first assignment of error, appellant argues that the state failed to present sufficient evidence to sustain his convictions, although in his argument he focuses solely on his conviction for aggravated murder. He specifically argues that the state did not introduce evidence that he acted purposely or with a prior calculation and design to commit murder. We do not agree. *Page 7 
 {¶ 12} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 14} Appellant was charged with aggravated murder, in violation of R.C. 2903.01, which states in relevant part: "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy. (B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."
 {¶ 15} Appellant testified that he, along with five other men, planned the robbery of Tony's Deli; that he and three of these men went to the deli on the *Page 8 
evening of December 13, 2004; that he shot his 9 mm handgun two times while in the store in order to establish order and authority among the people in the deli; that he heard Rembert shoot his .38 revolver at least twice; that he robbed Mr. Belhouane and the store of $1700; and that he and the five other men met at a separate location after the robbery and murders to split up the stolen money.
 {¶ 16} On appellant's testimony alone, notwithstanding the testimony of four of his co-defendants, law enforcement officials, and Mr. Belhouane, the state produced sufficient evidence to support a conviction on the offense of aggravated murder. By appellant's own testimony, he committed aggravated robbery[3] and kidnapping[4]
]against the employees and customers of Tony's Deli. The state produced sufficient evidence of appellant's mental state through his actions — he planned a robbery using a 9 mm handgun; he discharged his weapon in the deli in order to establish order and authority; and he did, in fact, take $1700 from Mr. Belhouane and the *Page 9 
store. There was sufficient evidence upon which the trier of fact could find that appellant had the requisite mental state to intend the consequences of his actions.
 {¶ 17} Although the state admits that Rembert was the triggerman in the deaths of Ms. Cordoves and Mr. Santiago, appellant is not exonerated from guilt on the charges of aggravated murder. After viewing the evidence in a light most favorable to the state, we find that the trial court could have found that appellant acted purposely to commit the aggravated murders of Ms. Cordoves and Mr. Santiago. Therefore, appellant's first assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 18} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} In his second assignment of error, appellant argues that the state's evidence does not weigh heavily enough to support a finding of aggravated murder. We disagree.
 {¶ 20} Based on application of the standards enunciated in Tibbs v.Florida, (1982), 457 U.S. 31, 102 S.Ct. 2211, the court in State v.Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 21} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created *Page 10 
such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 22} It is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230; State v. Thompkins (1997),78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. E/ey (1978), 56 Ohio St.2d 169.
 {¶ 23} This court, in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/ 64443, adopted the guidelines set forth in State v.Mattison (1985), 23 Ohio App.3d 10, 23, syllabus, to determine whether a judgment of conviction is against the manifest weight of the evidence. These factors include, but are not limited to: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.
 {¶ 24} Appellant testified that he committed aggravated robbery and kidnapping. During the commission of these crimes, Rembert shot the weapon that killed Ms. Cordoves and Mr. Santiago. Whatever consequences flow from the *Page 11 
planned agreement between the co-defendants in the robbery are attributed to each and every participant as if he were the principal offender. Appellant and his co-defendant, Rembert, armed with deadly weapons, planned and executed the robbery at Tony's Deli, along with their four co-defendants; two innocent people lost their lives as a result of the actions of these six men.
 {¶ 25} The court did not lose its way in finding appellant guilty on the four counts of aggravated murder. Therefore, appellant's second assignment of error is overruled.
 Sentencing {¶ 26} "III. The trial court erred by ordering convictions and consecutive sentences for separate counts because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14."
 {¶ 27} In his third assignment of error, appellant argues that the court erred in sentencing him multiple times for one act of conduct. Specifically, he argues that he should not have been ordered to serve consecutive sentences for the murders of Ms. Cordoves and Mr. Santiago when both deaths were the result of one incident. We disagree.
 {¶ 28} In State v. Rance (1999), 85 Ohio St.3d 632, the Supreme Court of Ohio reconsidered the issue of how to apply R.C. 2941.25(A) when determining whether two or more offenses constitute allied offenses of similar import. Prior to Rance, the *Page 12 
test used by the courts was that set forth in Newark v. Vazirani (1990),48 Ohio St.3d 81, syllabus, overruled by Ranee, supra.
 {¶ 29} Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import, and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
 {¶ 30} In Vazirani, the court compared the elements of the two crimes charged by reference to the particular facts alleged in the indictment.Vazihni, supra. Later cases compared the elements of the charged offenses in the abstract, without reference to facts alleged in the indictment. State v. Richey (1992), 64 Ohio St.3d 353, rehearing denied,65 Ohio St. 3d 1421, certiorari denied (1993), 507 U.S. 989,113 S.Ct. 1592, rehearing denied, 508 U.S. 934, 113 S.Ct. 2401.
 {¶ 31} In Ranee, the Ohio Supreme Court reconsidered whether the elements test should be conducted in terms of the facts of the specific case or in terms of the statutory elements of the offenses in the abstract. The court ruled that an analysis of *Page 13 
the elements in the abstract was proper, overruling Vazirani and language to the contrary in other cases. Ranee, supra, at paragraph one of the syllabus. Under Ranee, when determining whether two or more offenses are allied offenses of similar import, the court should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other. (Citation omitted.) And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C. 2941.25(B)." Id. at 638-639.
 {¶ 32} The deaths of Ms. Cordoves and Mr. Santiago were the results of two different bullets, shot at two separate times. Despite the relatively short amount of time between the two murders, Ms. Cordoves was shot in the back while trying to escape from appellant and his co-defendants, and Mr. Santiago was shot while he was being forced to open the cash register. The court, in State v. Caldwell, Cuyahoga App. No. 80556, 2005-Ohio-5134, held that "Ohio courts have ruled that when `a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense.'"
 {¶ 33} The court did not err in sentencing appellant to consecutive terms for the murders since, clearly, each murder required a separate act by the shooter. Therefore, appellant's third assignment of error is overruled.
 Judgment affirmed. *Page 14 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] The aggravated murder charges were indicted with a felony murder specification, a prior calculation and design specification, a repeat violent offender specification, a mass murder specification, a notice of prior conviction specification, and one-and three-year firearm specifications. All other counts in the indictment contained firearm specifications. Prior to trial, all specifications, except for the felony murder and firearm specifications, were dismissed.
[2] Co-defendant Keith testified that appellant had the .38 revolver in his possession when he entered the store; however the state is not contesting that Rembert was the triggerman.
[3] R.C. 2911.01 states: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; (2) Have a dangerous ordnance on or about the offender's person or under the offender's control; (3) Inflict, or attempt to inflict, serious physical harm on another.
[4] R.C. 2905.01 states in relevant part: "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony or flight thereafter; (3) To terrorize, or to inflict serious physical harm on the victim or another; * * *." *Page 1